UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL WARZEK,

        Petitioner,

    v.

FRANK X. CHAVEZ, Warden,

        Respondent.

_____/

No. C 10-2632 PJH

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Michael Warzek, a California prisoner currently incarcerated at Sierra Conservation Center in Jamestown, California, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court issued an order to show cause on August 20, 2012. Respondent Frank X. Chavez filed an answer on October 12, 2012, and Warzek filed a traverse on November 28, 2012. The court determines that the matter is suitable for decision without oral argument, and DENIES the petition for the reasons set forth below.

**BACKGROUND**

**A.    Factual Summary**

The following factual summary is taken directly from the opinion of the court of appeal affirming the judgment and conviction. Answer, Ex. C (*People v. Warzek*, No. H031218 (Cal. Ct. App. Dec. 17, 2008)).

A jury convicted Warzek of aggravated sexual assault upon a child under 14 (counts 1 and 2), lewd act upon a child 14 or 15 (count 3), lewd act upon a child under 14 by force or fear (counts 4, 5 and 6), and possession of child pornography (count 7).

The victim in this case was Warzek's daughter. The acts underlying counts 1 through 6 occurred when the victim was 10 through 14 or 15 years old. The victim testified

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

as to the acts.  Warzek testified and denied committing the acts.  As to one incident, Warzek testified that he was in church at the time of the incident and two witnesses testified that they believed Warzek was attending church at the time of the incident.

The victim testified that she saw pornography on Warzek's computer and knew about Warzek's computer file named "X,"  which, Warzek had told her, contained pornography.  A computer expert testified that he had located 1,984 images of child pornography on Warzek's computer that were intentionally downloaded from websites such as "underage.admirers" and "erotica.teensex."  He added that he had found most of the photographs in the user-created file named "X."  He identified five exhibits of which each displayed two of the photographs he had found.  The trial court admitted the exhibits into evidence.  Kathy M., the victim's mother and Warzek's former wife, testified that she had seen Warzek looking at pornography on his computer and once saw him trembling and exclaiming "agoo gaga" while viewing a picture of a naked girl who was approximately the victim's age.

**B.    Procedural History**

On October 16, 2006, a six day jury trial in the case against Warzek commenced in Santa Clara County Superior Court.  On November 13, 2006, the jury returned verdicts finding Warzek guilty of all the charged offenses.  On February 5, 2007, the superior court entered judgment and sentenced Warzek to fifty years to life in prison.  Warzek appealed to the California Court of Appeal, which affirmed his conviction on December 17, 2008.  Warzek filed a petition for review in the California Supreme Court which denied review on March 23, 2009.  Warzek filed the instant petition on June 15, 2010.

## ISSUES PRESENTED

Warzek raises the following claims for federal habeas relief:[1]

---

[1]    Although the August 20, 2012, order to show cause identified only the due process issues raised by the petition, the briefs filed by the parties address all the constitutional claims for habeas relief asserted by Warzek.  The claims are therefore fully submitted on the papers and the court reaches the merits of those claims here.

1    (1) the state court's admission of evidence that he viewed and possessed child

2  pornography violated his due process rights;

3        (2) the prosecution's cross-examination of Warzek regarding his possession and

4  viewing of child pornography violated his rights to due process and against self-

5  incrimination;

6        (3) the trial court's denial of Warzek's request to admit testimony from his former

7  wife's attorney from a related civil lawsuit pertaining to Warzek's molestation of their

8  daughter based on the attorney-client privilege violated Warzek's rights to due process,

9  compulsory process and confrontation;

10        (4) his trial counsel's failure to object to the prosecution's inquiries on cross-

11  examination regarding his use of his computer in viewing child pornography violated his

12  rights to due process and effective assistance of counsel; and

13        (5) the cumulative effect of the violation of his constitutional rights as set forth in the

14  above four claims violated his due process rights.

**STANDARD OF REVIEW**

16        A district court may not grant a petition challenging a state conviction or sentence on

17  the basis of a claim that was reviewed on the merits in state court unless the state court's

18  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

19  unreasonable application of, clearly established Federal law, as determined by the

20  Supreme Court of the United States; or (2) resulted in a decision that was based on an

21  unreasonable determination of the facts in light of the evidence presented in the State court

22  proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

23  mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09, (2000),

24  while the second prong applies to decisions based on factual determinations, *Miller-El v.*

25  *Cockrell*, 537 U.S. 322, 340 (2003).

26        A state court decision is "contrary to" Supreme Court authority, that is, falls under the

27  first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

28  reached by [the Supreme] Court on a question of law or if the state court decides a case

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   differently than [the Supreme] Court has on a set of materially indistinguishable facts."

2   *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application

3   of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

4   identifies the governing legal principle from the Supreme Court's decisions but

5   "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The

6   federal court on habeas review may not issue the writ "simply because that court concludes

7   in its independent judgment that the relevant state-court decision applied clearly

8   established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must

9   be "objectively unreasonable" to support granting the writ. *Id.* at 409.

10      A state court's determination that a claim lacks merit precludes federal habeas relief

11  so long as "fairminded jurists could disagree" on the correctness of the state court's

12  decision. *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (citing *Yarborough v.

13  Alvarado*, 541 U.S. 652, 664 (2004)). "[E]valuating whether a rule application [i]s

14  unreasonable requires considering the rule's specificity. The more general the rule, the

15  more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* "As a

16  condition for obtaining habeas corpus [relief] from a federal court, a state prisoner must

17  show that the state court's ruling on the claim being presented in federal court was so

18  lacking in justification that there was an error well understood and comprehended in

19  existing law beyond any possibility for fairminded disagreement." *Id.*

20      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

21  determination will not be overturned on factual grounds unless objectively unreasonable in

22  light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

23  Review under § 2254(d)(1) is limited to the record that was before the state court that

24  adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

25  \\

26  \\

27

28

**DISCUSSION**

**I.     Claim That Admission of Child Pornography Evidence Violated Due Process**

    **A.     Legal Standard**

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986).  The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)).

Under Ninth Circuit authority, a habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision.  *Boyde v. Brown*, 404 F.3d 1159, 1172, *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005).  Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  *See Henry*, 197 F.3d at 1031; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990.  The admission of evidence violates due process only if there are no permissible inferences that the jury may draw from the evidence, in light of the court's instructions.  *See Jammal*, 926 F.2d at 920.  "Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'"  *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986), *cert. denied*, 479 U.S. 1068 (1987)).

United States District Court
For the Northern District of California

1

### B.    Admission of Child Pornography

2      Warzek contends that his right to due process was violated by the admission of

3  pornographic photographs of young girls that were found on Warzek's computer after his

4  arrest.  This claim does not warrant habeas relief because Warzek fails to demonstrate a

5  due process violation, as discussed below.  Warzek also argues that evidence of

6  possession of child pornography was inadmissible under state law, Traverse at 12-13, but it

7  is well-settled that federal habeas relief is unavailable for alleged errors in the interpretation

8  or application of state law.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011); *Estelle*

9  *v. McGuire*, 502 U.S. 62, 67-68 (1991).

10      The court of appeal summarized the trial court's evidentiary ruling as follows:

11          During in limine proceedings, defendant unsuccessfully sought to
           sever count 7.  He then sought a ruling that the photographs found
12         on his computer were inadmissible if he pleaded guilty to count 7.  He
           argued that the photographs were not sufficiently probative to prove a
13         propensity to commit counts 1 through 6 because possession of child
           pornography is an offense dissimilar to the offenses charged in
14         counts 1 through 6.  And he argued that the photographs tended
           toward being inflammatory and, thus, were highly  prejudicial.  The
15         trial court denied defendant's request.  It explained: "Let me just
           indicate then in doing a [Evidence Code section] 352 analysis it
16         appears to me that the photographs, having looked at them, they do
           appear to be qualifying evidence under [Evidence Code section]
17         1108, and whether otherwise be admissible weighs the prejudicial
           impact-which[,] the way it usually works[,] is anything from the
18         prosecution is typically prejudicial for the defense, and I don't mean
           to be flip about that, but weighing the prejudicial impact versus the
19         probative value of these photographs, I do think that the prejudicial
           value is not outweighed by the probative value, and under [Evidence
20         Code section] 1108 analysis I allow the photographs to be admitted."
           It later added: "When I look at them, the photographs, they do depict
21         what appears to be obvious young females in either nude poses or
           engaged in acts of sexual activity.  The charges here are not
22         dissimilar in that there is allegations that there was sexual conduct by
           a person under the age of eighteen and that there was sexual
23         contact.  [¶]  It seems to me that the photographs are probative of
           those issues, and let me indicate the court also looked at [specified
24         case law] on this area.  [¶]  Let me indicate . . . that would not-to
           answer your question and the court's [Evidence Code section] 352
25         analysis would not be disturbed by [pleading guilty to count 7].  Again
           I think that it's appropriate to allow them to come in."

26  Answer, Ex. C at 2-3.

27

28

6

United States District Court

For the Northern District of California

1   Warzek argues that if he had entered a plea of guilty or no contest to the

2   misdemeanor charge in court 7, charging him with possession of matter depicting sexual

3   conduct of a person under 18 years old, then any evidence of the pornographic images that

4   were found on his computer would have been inadmissible because the probative value of

5   those images was outweighed by the danger of undue prejudice under California Evidence

6   Code section 352.  Warzek's claim fails for three reasons: there is no clearly established

7   federal law recognizing a due process right against the admission of propensity evidence;

8   there was no error by the trial court in admitting the evidence of child pornography; and any

9   error in admitting this evidence was not prejudicial.

10   **1.   No Clearly Established Federal Law**

11   First, the United States Supreme Court has left open the question of whether

12   admission of propensity evidence violates due process.  *Estelle v. McGuire*, 502 U.S. 62,

13   75 n. 5 (1991).  Based on the Supreme Court's reservation of this issue as an "open

14   question," the Ninth Circuit has held that a petitioner's due process right concerning the

15   admission of propensity evidence is not clearly established as required by AEDPA.  *Alberni*

16   *v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006); *accord Mejia v. Garcia*, 534 F.3d 1036,

17   1046 (9th Cir. 2008) (reaffirming *Alberni*).  Because the state court's denial of this claim did

18   not result in "a decision that was contrary to, or involved an unreasonable application of,

19   clearly established Federal law," habeas corpus relief is not available.  *See* 28 U.S.C.

20   § 2254(d)(1).

21   **2.   Evidence Had Probative Value**

22   Second, Warzek fails to demonstrate evidentiary error in light of the record which

23   demonstrates that the trial court weighed the prejudicial impact against the probative value

24   of the photographs depicting female children who were either naked in a sexually

25   provocative pose, or were involved in oral copulation or sexual intercourse with an adult

26   man.  Answer, Ex. E (Reporter's Transcript ("RT")) at 21.  As the Ninth Circuit held in

27   *United States v. LeMay*, "the admission of prejudicial evidence, without more, cannot be

28   unconstitutional."  *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001), *cert.*

**United States District Court**
For the Northern District of California

1   *denied*, 534 U.S. 1166 (2002).  In *LeMay*, the court of appeals considered a due process

2   challenge to Federal Rule of Evidence 414, which permits the court to admit evidence of

3   similar crimes in child molestation cases, to be considered on any matter to which it is

4   relevant.  In deciding whether the traditional ban on propensity evidence involves a

5   fundamental conception of justice so as to rise to a level of constitutional magnitude, the

6   court in *LeMay* reviewed historical evidence showing that courts have consistently allowed

7   propensity evidence in sex-offense cases despite its general ban in other criminal

8   prosecutions.  *Id.* at 1025.  The *LeMay* court noted that the balancing test of Federal Rule

9   of Evidence 403, allowing the court to exclude relevant evidence if its probative value is

10  substantially outweighed by a danger of unfair prejudice or other reasons, applies to

11  evidence of similar crimes under Rule 414.  *Id.* at 1026.  The Ninth Circuit upheld the

12  constitutionality of Rule 414, reasoning that allowing propensity evidence under Rule 414

13  does not violate fundamental ideas of fairness as long as the protections of Federal Rule of

14  Evidence 403 remain in place so that district judges retain the discretion to exclude

15  "potentially devastating evidence of little probative value."  *LeMay*, 260 F.3d at 1026.

16      Here, Warzek does not challenge the constitutionality of the state evidentiary rules,

17  but contends that the state court erred by holding that the child pornography evidence was

18  admissible because the probative value of the evidence was substantially outweighed by

19  the danger of undue prejudice, confusing the issues or misleading the jury under section

20  352 of the California Evidence Code.  California Evidence Code § 352 is nearly identical to

21  Federal Rule of Evidence 403, which likewise acts as a safeguard, allowing the court to

22  exclude evidence if its probative value is substantially outweighed by the substantial danger

23  of undue prejudice, of confusing the issues, or of misleading the jury.  Warzek fails to show

24  that the evidence of child pornography had little or no relevance that was far outweighed by

25  the potential for prejudice.

26      A state court's evidentiary ruling is not subject to federal habeas relief unless the

27  ruling violates federal law, either by infringing upon a specific federal constitutional or

28  statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed

United States District Court

For the Northern District of California

1    by due process. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). The Ninth Circuit

2    has held that the introduction of propensity evidence can amount to a constitutional

3    violation only if its prejudicial effect far outweighs its probative value, where the evidence

4    gives rise to no permissible inference. *See LeMay*, 260 F.3d at 1026 (citing *McKinney v.

5    Rees*, 993 F.2d 1378 (9th Cir. 1993)). In *McKinney*, the court of appeals held, after

6    considering the facts of that case as a whole, that character evidence was erroneously

7    admitted to show propensity and was so prejudicial as to render the trial fundamentally

8    unfair. In *McKinney*, the petitioner was tried for the murder of his mother, who was found

9    with her throat slit. No murder weapon was identified, but the state court admitted evidence

10   that the petitioner owned a dagger-type Gerber knife that had been confiscated by police

11   before the victim's death; that the petitioner strapped a knife to his body while wearing

12   camouflage pants; and that he used his knife to scratch the words "Death is His" on his

13   closet door. The court of appeals found that that no permissible inferences could be made

14   from this character evidence and that the evidence was not relevant.[2] *Id.* at 1382-84. The

15   court in *McKinney* then reviewed the record to determine whether the erroneously admitted

16   propensity evidence "had a substantial and injurious effect or influence in determining the

17   jury's verdict." *Id.* at 1387 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)

18   (internal citations and quotation marks omitted)). The court concluded in *McKinney* that in

19   light of the solely circumstantial evidence against the petitioner, the erroneous admission of

20   the character evidence rendered the trial fundamentally unfair in violation of the due

21   process clause. *Id.* at 1386.

22         Unlike *McKinney*, where the propensity evidence at issue was irrelevant to proving

23   that the petitioner was guilty of murder, images showing child pornography taken from

24   Warzek's computer were relevant to counts 1 through 6 charging him with sexual assault

25   and lewd acts upon a child. The prosecutor sought to admit 29 images of young girls in

26   _____

27         [2]   By contrast, the court found that the evidence suggesting that the petitioner
      owned a dagger-type Tekna knife at the time of the murder was relevant to the issue of
28   identity, and held that its admission did not violate the historically grounded rule against the
      use of "other acts" evidence to prove character. *McKinney*, 993 F.2d at 1383-84 and n.7.

United States District Court

For the Northern District of California

1   nude poses or engaged in acts of sexual activity with an adult man, which the trial court

2   found to be probative of the allegations that Warzek committed sexual acts against a

3   female under the age of eighteen.  RT at 45.  To reduce the prejudicial impact of the

4   photographs, the state court admitted only 10 of the 29 proffered images at trial, and

5   admitted smaller 4" by 6" photographs rather than the 8 ½" by 11" photographs initially

6   proffered by the prosecution.  RT 40-41, 328-31; Answer, Ex. E, Vol. 12 (Oct. 25, 2006

7   transcript) at 3-5.

8         Warzek argues that the photographs had no probative value because there is no

9   similarity between the possession of child pornography and the charged felonies alleging

10   sexual conduct with a child.  Traverse at 12 (citing *People v. Branch*, 91 Cal. App. 4th 274,

11   285 (2001) (" if the prior offenses are very similar in nature to the charged offenses, the

12   prior offenses have greater probative value in proving propensity to commit the charged

13   offenses")).  Warzek also argues that the prosecution failed to produce any evidence that

14   mere possession of child pornography creates a propensity to engage in the alleged sexual

15   conduct against a minor.  The record demonstrates, however, that the prosecutor argued

16   during in limine proceedings that the photographs were integral to show that Warzek had a

17   "sexual orientation towards children."  RT 29.  Based on this record, Warzek has not

18   demonstrated that the evidence of child pornography was not relevant, or that its prejudicial

19   value far outweighed its probative value, such that admission of the evidence rendered his

20   trial fundamentally unfair.

21         **3.    No Prejudicial Error**

22              **a.    Victim's Testimony**

23         Even if the trial court erred in admitting the evidence of child pornography found on

24   Warzek's computer, any error was harmless under *Brecht*, 507 U.S. at 623.  The admission

25   of 10 photographs depicting pornographic images of young girls did not have a  substantial

26   and injurious effect or influence in determining the jury's verdict in light of the entire trial

27   record.  The key prosecution witness was the victim who testified that her father, Warzek,

28   molested her, starting when she was seven or eight years old.  RT 61, 422.  The record

United States District Court

For the Northern District of California

1  demonstrates that the victim was highly credible: she was close to her father and did not

2  testify out of vengeance or anger, having told an investigator that she did not want Warzek

3  to be "nailed," but hoped he would receive the psychiatric help he needed.  RT 67, 428-29.

4  She admitted that she could not remember dates and did not remember all the incidents of

5  sexual assault, but certain incidents stood out in her memory.  RT 64-70.

6          At trial, Warzek's attorney tried to undermine the victim's credibility by pointing out

7  that she initially lied to the police.  RT 845-846.  When police first responded to the report of

8  child molestation on March 29, 2005, the victim asked the investigator, Officer Perea, if he

9  was going to take her father to jail, commented that she didn't want to break up her family,

10  and told the officer that nothing sexual had ever happened between her and her father.  RT

11  246-250.  The victim was taken to the San Jose Police Department, where she was

12  interviewed by Officer Pineda, who testified that the victim described an incident on the

13  Saturday before Easter.  RT 350-353.  The victim also told Officer Pineda that she didn't

14  want to cause problems between her parents, and that her father had been molesting her

15  for about one year.  RT 354.  Officer Pineda arranged a pretext call for the victim to contact

16  Warzek to talk about the recent incident.  RT 357-358.  The recording of the pretext call

17  was played and admitted into evidence, and a transcript was provided to the jury during the

18  playback.  RT 360-61; Answer, Ex. F, Vol. 3 (transcript of pretext call).

19          In October 2005, the victim was re-interviewed by an investigator for the district

20  attorney's office, Inspector Moreland.  RT 415.  The victim detailed to her eight incidents of

21  molestation over the past six years, starting when she was in third grade, between seven

22  and eight years of age.  RT 422-423.  In closing, the prosecutor pointed out that the victim

23  admitted that she lied to the first officer, and noted that the victim testified that she did not

24  want to live alone with her mother.  RT 821-22; 824.  The victim also testified that she told

25  the second officer that the molestation had occurred for only one year but did not tell him

26  everything because she just wanted to end the interview.  RT 93; 824-825.

27          Defense counsel questioned the victim's credibility with respect to a particular

28  incident when she was 14 years old, that occurred around March 27, 2005, which was

1   Easter Sunday.  The victim testified that Warzek got into the victim's bed in the morning,

2   either on Saturday or Sunday when her mother was home, and initiated sexual contact with

3   her.  RT 85-87.  The victim walked out of the room, and felt betrayed by Warzek who had

4   promised that he would stop molesting her.  RT 87.  The victim realized that her father

5   would not stop and, within days, told her mother in vague terms that Warzek was molesting

6   her.  RT 87-88.  The victim's mother thereafter called the police.  RT 88-90.  Warzek denied

7   that this incident could have happened because on the morning of Easter Sunday, he

8   participated in a bell choir at his church and was not even home.  RT 555-61.   Two church

9   members corroborated his alibi for Easter Sunday morning from about 7:15 a.m when

10  rehearsal began, and during the rehearsal on the preceding Saturday from 10:00 a.m. to

11  11:00 a.m.  RT 516-22, 526-30.

12       Defense counsel argued in closing that the victim told her mother and an investigator

13  that this incident occurred on Easter Sunday when Warzek was at the church, and

14  suggested that the victim later changed her story to include the possibility that it might have

15  occurred on Saturday morning.  RT 859-60.  The prosecutor pointed out during rebuttal,

16  however, that during the pretext call to Warzek on March 29, 2005, only a few days after

17  the incident, the victim confronted Warzek about touching her on Saturday, thereby

18  corroborating the victim's trial testimony that the incident occurred either on Easter Sunday

19  or the preceding Saturday morning.  RT 873.  *See* Answer, Ex. F, Vol. 3 (transcript of

20  pretext call) at 9.  Furthermore, during the pretext call, Warzek told the victim that he went

21  into her bed on the morning of the incident because he was "frozen cold" from sleeping on

22  the couch.  *Id.* at 10.  At trial, however, Warzek testified that he did not get into bed with the

23  victim at all that weekend, either Saturday or Easter Sunday, even to warm up.  RT 614,

24  618.  On this record, a jury reasonably could have believed the victim's account of the most

25  recent molestation incident over Warzek's inconsistent statements about getting into the

26  victim's bed that weekend.

27       Defense counsel also suggested that the victim was motivated to lie because her

28  mother, Kathy M., as guardian ad litem, tried to sue Warzek in an effort to get money that

United States District Court

For the Northern District of California

1   Warzek inherited from his father's estate.  RT 205, 210.  Kathy M. testified that she

2   "temporarily" dismissed her lawsuit sometime after receiving discovery requests and

3   postponed the litigation to a future date.  RT 206-208.  In closing, the prosecution

4   downplayed the defense theory that the victim fabricated the details of molestation because

5   of the civil lawsuit that her mother filed, and argued that the victim did not want to live with

6   her mother and had no motive to lie.  RT 827, 839-840.

7        The prosecution also argued that the victim's testimony was corroborated by other

8   evidence, primarily the victim's pretext call to Warzek where he admitted that something

9   happened "last Saturday," though not of a sexual nature, referring to the most recent

10  molestation incident.  RT 832.  The prosecution also noted that the victim's testimony was

11  corroborated by her sexual assault response team (SART) exam, which the examining

12  physician's assistant found to show indicia highly suggestive of penetrating injuries.  RT

13  400, 836.  The defense presented a rebuttal expert who disagreed with the prosecution's

14  experts and opined that the results of the victim's SART exam were not necessarily

15  indicative of sexual trauma.  RT 641-644.  The prosecution's expert acknowledged that

16  there was a small possibility that the findings from the victim's SART exam were normal

17  variations, but concluded that based on those findings, there was a significant degree of

18  likelihood that they were caused by penetrating trauma.  RT 695.  Although the results of

19  the victim's SART exam were subject to differing interpretations, they were consistent with

20  the victim's account of molestation.

21            **b.      Warzek's Testimony**

22        Warzek testified on his own behalf, and concedes that the outcome of the trial

23  "essentially came down to an issue of credibility between [Warzek and the victim] as to

24  what happened."  Traverse at 14.  In contrast to the victim's credible account detailing

25  certain incidents of sexual conduct and assault and describing her emotional reactions, RT

26  61-87, Warzek categorically denied that he ever had sexual contact with the victim, and

27  admitted only to going into the victim's bed to talk and cuddle with her, or tickle or poke her

28  to wake her up.  RT 569-70, 614-16, 630.  In particular, Warzek testified that he did not go

United States District Court

For the Northern District of California

1   into the victim's bed during the weekend of the most recent incident in March 2005.  RT

2   614, 618.  Warzek's testimony was impeached, however, by his prior statement to the

3   victim during the pretext call that he went into her bed that morning because he was cold.

4   Answer, Ex. F, Vol. 3 at 10.

5        Warzek's credibility was also damaged by his explanation for how the pornographic

6   images were saved on his computer.  Warzek testified that he knew that there was some

7   child pornography on his computer, but that he was not aware that his computer had visited

8   child pornography sites.  He explained that the sexual images of children were

9   automatically downloaded by the newsreader programs that were installed on his

10  computer.  RT 581-98.  However, a computer forensics expert for the prosecution who

11  reviewed the filed on Warzek's computer opined that most of the images showing child

12  pornography were not accidentally downloaded because they were saved in a folder

13  labeled "X" which was not automatically created by the software.  RT 376.  The expert also

14  testified that many of the images were accessed after the date of their original download.

15  RT 337-38.  Based on his review of the evidence on Warzek's computer, the expert

16  concluded that the images were not automatically or passively downloaded as Warzek

17  testified, but that Warzek intentionally downloaded the child pornography.  RT 335.

18       In light of this record, the admission of the 10 pornographic images of children taken

19  from Warzek's computer did not have substantial and injurious effect or influence in

20  determining the jury's verdict.  Therefore, any error in admitting those photographs was

21  harmless and did not violate Warzek's right to due process.

22  **II.     Right Against Self-Incrimination**

23          **A.     Legal Standard**

24       The Fifth Amendment provides that "[no] person . . . shall be compelled in any

25  criminal case to be a witness against himself."  U.S. Const. amend. V.  "A defendant who

26  testifies at trial waives his Fifth Amendment privilege and may be cross-examined on

27  matters made relevant by his direct testimony."  *United States v. Black*, 767 F.2d 1334,

28  1341 (9th Cir. 1985) (citing  *Brown v. United States*, 356 U.S. 148, 154-155 (1958)).  "The

14

United States District Court

For the Northern District of California

1  privilege is waived for the matters to which the witness testifies, and the scope of the

2  'waiver is determined by the scope of relevant cross-examination.'" *Mitchell v. United*

3  *States*, 526 U.S. 314, 321 (1999) (quoting *Brown*, 356 U.S. at 154-155).  Fixing the extent

4  of cross-examination, in turn, is left to the discretion of the trial judge.  *Black*, 767 F.2d at

5  1341 (citations omitted).

6         The scope of the waiver and the permissible cross-examination are not determined

7  by what the defendant actually discussed during his direct testimony.  *United States v.*

8  *Hearst*, 563 F.2d 1331, 1340 (9th Cir. 1977).  "Rather, the focus is on whether the

9  government's questions are 'reasonably related' to the subjects covered by the defendant's

10  testimony."  *Id.*  "[A]n accused who takes the stand 'may not stop short in his testimony by

11  omitting and failing to explain incriminating circumstances and events already in evidence,

12  in which he participated and concerning which he is fully informed, without subjecting his

13  silence to the inferences to be naturally drawn from it.'"  *Johnson v. United States*, 318 U.S.

14  189, 196 (1943) (quoting *Caminetti v. United States*, 242 U.S. 470, 494 (1917)).

15         **B.    Warzek's Cross-Examination**

16         Warzek testified on his own behalf, and during his direct examination, he was not

17  asked about the child pornography found on his computer, and avoided any statements or

18  references to that subject matter.  During cross-examination, the prosecutor asked Warzek

19  if he was familiar with about 14 different websites containing or advertising child

20  pornography that had been visited on his computer.  RT 580-590.  Warzek denied knowing

21  that his computer had been to those websites, except for one named

22  teenpinkvideos[dot]com, and testified that a software program automatically downloaded

23  the child pornography onto his computer.  Defense counsel objected to the questions about

24  the pornographic images found on Warzek's computer on the ground that the cross-

25  examination exceeded the scope of Warzek's direct testimony; the trial court overruled the

26  objection.  RT 602-610, 659-664.  Warzek now seeks habeas relief on the ground that the

27  cross-examination exceeded the scope of his testimony on direct examination, and the

28

1    prosecutor's improper questioning about the child pornography resulted in a due process

2    violation.

3         The state court rejected Warzek's argument on appeal that the inquiries about the

4    child pornography on his computer exceeded the scope of his direct examination.  The

5    state court found that the inquiries about the images found on his computer were directed

6    at Warzek's testimony about the pretext call during which he asked the victim about the

7    illegal images on his computer.  Answer, Ex. C at 12.  The state court also held that

8    because Warzek denied committing the sex offenses against the victim, he placed at issue

9    his propsensity to commit sex offenses, which the possession of child pornography tended

10   to prove. *Id.* at 13.

11        The court of appeal erred in finding that the cross-examination was within the scope

12   of direct examination "given that defendant himself broached the subject via the recorded

13   telephone conversation in which defendant told the victim about illegal things on his

14   computer."  Answer, Ex. C at 12.  The record demonstrates that Warzek did not testify

15   about the pretext call during his direct examination.  In opposing defense counsel's

16   objection to the scope of cross-examination, the prosecutor argued that the pretext call had

17   been previously admitted into evidence and that during the telephone call, Warzek asked

18   the victim to delete illegal things on his computer by clearing the hard drive.  Answer, Ex. F,

19   Vol. 3 at 17.  The prosecution contended that it was entitled to cross-examine Warzek on

20   matters to impeach his credibility, including evidence of moral turpitude, such as

21   possession of child pornography, and evidence that he asked his daughter to destroy

22   evidence.  RT at 661-662.  The trial court allowed the cross-examination because Warzek

23   made a general denial of the charges against him.  RT 664.  Warzek did not, however,

24   testify about the pretext call during his direct examination.  *See* RT 549-570.  The state

25   court therefore erred in finding that Warzek testified about discussing the computer files

26   with the victim during the recorded pretext call.  The court need not consider whether this

27   error was prejudicial because the state court's alternate ruling was not unreasonable or

28   contrary to clearly established federal law.  *See Wetzel v. Lambert*, 132 S. Ct. 1195,

1    1198-2000 (2012) (habeas relief is not permitted "unless each ground supporting the state

2    court decision is examined and found to be unreasonable under AEDPA").

3        As an alternate basis for finding that the trial court did not abuse its discretion in

4    allowing the cross-examination into the illegal computer files, the state court of appeal held

5    that Warzek put his propensity to commit sex offenses at issue by denying that he

6    committed the sex offenses.  Answer, Ex. C at 13.  This ruling by the state court was

7    neither contrary to, nor an unreasonable application of, clearly established federal law

8    governing the scope of waiver of the Fifth Amendment privilege.

9        In *Mitchell*, the Supreme Court, in holding that a guilty plea does not waive the

10   privilege against self-incrimination at sentencing, noted the well-established rule that a

11   witness, in a single proceeding, may not testify voluntarily about a subject and then invoke

12   the privilege against self-incrimination when questioned about the details:

13              The justifications for the rule of waiver in the testimonial context are
                evident: A witness may not pick and choose what aspects of a
14              particular subject to discuss without casting doubt on the
                trustworthiness of the statements and diminishing the integrity of the
15              factual inquiry. As noted in *Rogers* [*v. United States*, 340 U.S. 367,
                371 (1951)], a contrary rule "would open the way to distortion of facts
16              by permitting a witness to select any stopping place in the
                testimony[.]"  It would, as we said in *Brown*, "make of the Fifth
17              Amendment not only a humane safeguard against judicially coerced
                self-disclosure but a positive invitation to mutilate the truth a party
18              offers to tell," 356 U.S. at 156.  The illogic of allowing a witness to
                offer only self-selected testimony should be obvious even to the
19              witness, so there is no unfairness in allowing cross-examination when
                testimony is given without invoking the privilege.

20   *Mitchell*, 526 U.S. at 322.  In *Rhoden v. Rowland*, 10 F.3d 1457, 1461 (9th Cir. 1993), the

21   Ninth Circuit recognized that "'a defendant may be found to have waived her right to refuse

22   to testify regarding prior bad acts . . . so long as [the testimony] is being offered for a

23   purpose reasonably related to a material issue raised in the defendant's testimony on direct

24   examination.'"  *Id.* (quoting *United States v. Cuozzo*, 962 F.2d 945, 948 (9th Cir. 1992)).  In

25   *Rhoden*, the habeas petitioner argued that the trial court unconstitutionally prevented him

26   from testifying on his own behalf in a rape case by ruling that he could be cross-examined

27   about two pending rape charges even if he did not open the door to those charges under

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    direct examination.  Where the petitioner proffered testimony that he "sincerely believed"

2    that the victim consented to sex, the Ninth Circuit held that the evidence of other rapes was

3    relevant to whether he had a reasonable, good faith belief that the victim consented.  *Id*.

4    Accordingly, the court in *Rhoden* held that the trial court did not err by ruling that the

5    petitioner's proposed testimony would open him to cross-examination concerning the other

6    rapes.

7          Warzek's direct testimony denying that he ever had sexual intercourse or sexual

8    contact with the victim raised issues about his credibility and his propensity to commit sex

9    crimes against children.  In particular, Warzek testified that one morning, he pulled the

10   covers off the victim's bed to wake her up, and saw her wearing only underwear and a t-

11   shirt, laying on a bloody feminine pad.  RT 567.  Warzek stated, "I don't think that that's

12   appropriate for me as a father to see my daughter like that," and also referred to the victim

13   as "my precious child."  RT 567-568.  By implying that he would not have inappropriate

14   sexual contact with his daughter, Warzek's testimony put his sexual interest in children at

15   issue.  *See Hearst*, 563 F.2d at 1341 ("Since appellant's direct testimony raised an issue

16   about the nature of her conduct during the entire one and one-half years prior to her arrest,

17   the government's questions about her activities, associations, and residences during the

18   interim year were more than 'reasonably related' to the subject matter of her prior

19   testimony.").

20         Here, like the pending rape charges in *Rhoden*, Warzek's possession of child

21   pornography was reasonably related to the subject matter of his direct testimony, where he

22   denied having any sexually inappropriate contact with the victim.  Therefore, Warzek was

23   properly subjected to cross-examination on the presence of child pornography on his

24   computer, including questions about whether he was familiar with how many times his

25   computer visited those websites and how the images became saved on his computer.  "The

26   scope of cross-examination in a criminal case is governed by the simple rule of whether the

27   questions propounded are designed to test sincerity and truthfulness or are 'reasonably

28   related' to the subject covered on direct."  *United States v. Sturgis*, 578 F.2d 1296, 1300

United States District Court

For the Northern District of California

1   (9th Cir. 1978).  Warzek has not demonstrated that his Fifth Amendment privilege against

2   self-incrimination was violated, or that the state court committed prejudicial error in violation

3   of his right to due process.

4   **III.    Exclusion of Attorney-Client Privileged Communications**

5          **A.    Legal Standard**

6          "State and federal rulemakers have broad latitude under the Constitution to establish

7   rules excluding evidence from criminal trials."  *Holmes v. South Carolina*,

8   547 U.S. 319, 324 (2006) (quotations and citations omitted); *see also Montana v. Egelhoff*,

9   518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right

10  to present all relevant evidence).  This latitude is limited, however, by a defendant's

11  constitutional rights to due process and to present a defense, rights originating in the Sixth

12  and Fourteenth Amendments.  *See Holmes*, 547 U.S. at 324.  "While the Constitution

13  prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or

14  that are disproportionate to the ends that they are asserted to promote, well-established

15  rules of evidence permit trial judges to exclude evidence if its probative value is outweighed

16  by certain other factors such as unfair prejudice, confusion of the issues, or potential to

17  mislead the jury."  *Id.* at 325-26; *see Egelhoff*, 518 U.S. at 42 (holding that the exclusion of

18  evidence does not violate the Due Process Clause unless "it offends some principle of

19  justice so rooted in the traditions and conscience of our people as to be ranked as

20  fundamental.").

21         The Ninth Circuit has articulated a five-factor balancing test for deciding if the

22  exclusion of evidence violates the due process right to a fair trial or the right to present a

23  defense: (1) the probative value of the excluded evidence on the central issue; (2) its

24  reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole

25  evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of

26  the attempted defense.  *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004) (citing *Miller v.*

27  *Stagner*, 757 F.2d 988, 994 (9th Cir.), *amended on other grounds*, 768 F.2d 1090 (9th Cir.

28  1985)); *Drayden v. White*, 232 F.3d 704, 711 (9th Cir. 2000) (same).  The court must also

19

United States District Court

For the Northern District of California

1  give due weight to the state interests underlying the state evidentiary rules on which the

2  exclusion was based.  *See Chia*, 360 F.3d at 1006; *Miller*, 757 F.2d at 995.

3  **B.    Exclusion of Attorney's Testimony**

4  Warzek claims that his right to due process and his Sixth Amendment rights to

5  compulsory process and to confront witnesses were violated by the exclusion of testimony

6  based on invalid assertion of the attorney-client privilege where the privilege had been

7  waived.  This claim does not warrant habeas relief.

8  The victim's mother, Kathy M., testified that her attorney, Donald DeVries, filed a

9  guardian ad litem action against Warzek alleging claims on behalf of the victim.  Kathy M.

10  testified that the lawsuit was filed on April 14, 2006, then was dismissed "temporarily."  RT

11  205-206.  On cross-examination, defense counsel asked Kathy M. whether she and

12  DeVries discussed refiling the lawsuit after Warzek's criminal trial concluded, to which she

13  answered "maybe" and indicated that whether the civil case would be refiled "stands to be

14  determined."  RT 207- 208.  Kathy M. also testified that when the lawsuit was dismissed,

15  DeVries told her that she "had enough stress right now and that we were going to postpone

16  this until a future date and if at all."  RT 208.

17  At a hearing outside the presence of the jury, defense counsel questioned DeVries

18  about the reasons for dismissing the civil lawsuit and the likelihood of refiling the civil action

19  after the conclusion of the criminal prosecution, which DeVries refused to answer on the

20  ground of attorney-client privilege.  RT 539-543.  The trial court upheld the assertion of the

21  privilege over defense counsel's objection.  RT 543-547.  The court of appeal did not

22  consider whether the trial court erred by upholding the privilege, but concluded that even

23  assuming that error occurred, any error was harmless:

24  Defendant claims that the inability to question the attorney
prejudiced him as follows:  "The prohibited examination was tailored to

25  show that [the former wife] was the 'driving force' behind the civil case
to obtain a money judgment against defendant, that [she] was using

26  her daughter to accomplish that goal, and that was the true motivation
behind the criminal case.  This in turn would give substance to a claim

27  that [she] was getting her daughter to fabricate the events against
defendant so that [they] could have access to defendant's

28  inheritance."

> But defendant had placed these issues before the jury. Defendant's former wife admitted that she authorized the civil suit against defendant to reach his inheritance. And she refused to rule out that the since dismissed suit would not be refiled after resolution of the criminal proceeding. Her attorney's testimony would have added nothing to the import of her testimony. Defendant fails to and cannot deny this reality.

Answer, Ex. C. at 14.

Warzek contends that Kathy M. had waived the attorney-client privilege with regard to communications between herself and DeVries as to the subject matter of the civil lawsuit against Warzek, including the reasons for dismissal and whether the lawsuit would be refiled. Traverse at 22. Warzek also contends that the state court's error in upholding the privilege was prejudicial because the examination of DeVries was tailored to show that the true motivation behind the criminal case was Kathy M.'s goal of obtaining a money judgment to access Warzek's inheritance. Traverse at 25. Warzek contends that the case against him came down to an issue of credibility between himself and the victim. Because he was denied the opportunity to demonstrate weakness in Kathy M.'s or the victim's credibility, Warzek contends that this limitation on his ability to present a defense resulted in a substantial and injurious effect on the outcome of the trial.

### 1.    No Clearly Established Federal Law Establishes Basis for Relief

First, Warzek fails to show that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law because there is no Supreme Court precedent recognizing a right to breach the attorney-client privilege. In *Swidler & Berlin v. United States*, 524 U.S. 399, 408 n. 3 (1998), the Supreme Court reserved the question of whether "exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the [attorney-client] privilege." *See also Murdoch v. Castro*, 609 F.3d 983, 995-96 (9th Cir. 2010) (en banc) ("the Supreme Court has not clearly established whether and in what circumstances the attorney-client privilege must give way in order to protect a defendant's Sixth Amendment confrontation rights") (plurality opinion).

21

## 2. No Due Process Violation

Second, even if Kathy M. waived the attorney-client privilege and the state court erroneously excluded DeVries' testimony in violation of Warzek's rights to compulsory process and confrontation, Warzek fails to show that such error denied him "the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).   Even if an evidentiary error is of constitutional dimension, the court must consider whether the error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).   *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001).

In a habeas proceeding, determining whether the exclusion of evidence in the trial court violated petitioner's due process rights involves a balancing test, weighing the importance of the evidence against the state's interest in exclusion. *Chia*, 360 F.3d at 1003-04; *Miller*, 757 F.2d at 994.   Applying the *Miller* factors here, the exclusion of DeVries' testimony did not prevent Warzek from presenting a full defense.   Primarily, the excluded evidence had little probative value because, as the state court found, Kathy M. had admitted that she authorized the civil lawsuit to reach Warzek's inheritance and did not rule out the possibility that the lawsuit would be refiled after resolution of Warzek's criminal proceeding.   Answer, Ex. C at 14.   Further, DeVries was not the only witness on the issue of the civil lawsuit, and his testimony would have been merely cumulative because it would not have added much to Kathy M.'s own admission that she was seeking a judgment against Warzek for money on the victim's behalf "that would go directly to college."   RT 210.   From this admission, defense counsel was able to argue in closing that the true motivation behind the criminal case was that Kathy M. "clearly knew that there was an inheritance that belonged to [Warzek] and she wanted some of that action."   RT 858. Defense counsel also argued that the victim's testimony was not reliable because her statements about having sexual contact with Warzek was due to "a blowing up of the allegations by [the victim] and Kathy that I suggest should give you great pause when you are deciding the believability of this young woman."   RT 865.   Although DeVries' testimony would have been reliable and capable of evaluation by the jury, his testimony would not

1   have been a "major part of the attempted defense" because the victim's mother had already

2   testified about the monetary motive for filing the civil lawsuit against Warzek.

3        Warzek fails to show that the exclusion of DeVries' testimony violated his right to

4   due process.  Therefore, the decision of the state court to exclude testimony concerning

5   attorney-client privileged communications was neither unreasonable nor contrary to clearly

6   established federal law.

7   **IV.    Ineffective Assistance of Counsel**

8        **A.    Legal Standard**

9        A claim of ineffective assistance of counsel is cognizable as a claim of denial of the

10  Sixth Amendment right to counsel, which guarantees not only assistance, but effective

11  assistance, of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The

12  benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

13  undermined the proper functioning of the adversarial process that the trial cannot be relied

14  upon as having produced a just result.  *Id.*

15       In order to prevail on an ineffectiveness of counsel claim, petitioner must satisfy the

16  two-pronged test set forth in *Strickland*.  First, petitioner must establish that counsel's

17  performance was deficient, i.e., that it fell below an "objective standard of reasonableness"

18  under prevailing professional norms.  *Id.* at 687-88.  Second, he must establish that he was

19  prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability

20  that, but for counsel's unprofessional errors, the result of the proceeding would have been

21  different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine

22  confidence in the outcome.  *Id.*  If a petitioner cannot establish that defense counsel's

23  performance was deficient, it is unnecessary for a federal court considering an ineffective

24  assistance habeas claim to address the prejudice prong of the *Strickland* test.  *See*

25  *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

26       The *Strickland* framework for analyzing ineffective assistance of counsel claims is

27  considered to be "clearly established Federal law, as determined by the Supreme Court of

28  the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  *Cullen*, 131 S. Ct. at

United States District Court
For the Northern District of California

1403.  A "doubly" deferential judicial review is appropriate in analyzing ineffective

assistance of counsel claims under § 2254.  *See id.* at 1410–11; *Harrington*, 131 S. Ct.

770, 788 (same); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011) (same).  The general rule of

*Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the

state courts greater leeway in reasonably applying that rule, which in turn "translates to a

narrower range of decisions that are objectively unreasonable under AEDPA."  *Cheney v.*

*Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S.

652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions

were reasonable.  The question is whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard."  *Harrington*, 131 S. Ct. at 788.

### B.   Failure to Object

Warzek contends that his trial counsel was ineffective for failing to object to

questioning during Warzek's cross-examination that suggested that the prosecution had a

source of information unknown to the jury which corroborated the truth of the matters

referred to in the questions.  This ineffective assistance of counsel claim does not warrant

habeas relief.

As discussed earlier in the context of Warzek's first habeas claim concerning the

admission of child pornography, the prosecutor asked Warzek about his familiarity with 14

different websites with provocative names or advertising that had been visited by his

computer.  For example, the prosecutor referred to a website featuring young girls named

galitsin-new[dot]com and asked Warzek whether he knew that his computer had visited that

website approximately 833 times.  RT 580-581.  The prosecutor also asked Warzek if he

was aware that his computer had visited particular websites 258 times, 82 times, 37 times,

29 times, 24 times, 22 times, 21 times, and 19 times, respectively.  RT 581-586.  Warzek

contends that the prosecutor never presented evidence to support the suggestion that

Warzek's computer had visited those websites for the specific number of times mentioned

in the questions, or that the websites at issue actually contained illegal child pornography

rather than adult pornography.  Traverse at 27.  Warzek contends that his trial attorney

United States District Court

For the Northern District of California

1   provided ineffective assistance by failing to object to these questions which suggested to

2   the jury that the prosecution had a source of information to corroborate the number of times

3   that Warzek's computer visited each website.

4          In the last reasoned opinion to address the ineffective assistance claim, the state

5   court held that Warzek failed to show deficient representation because under state law, "it

6   is not improper to ask a question of a defense witness that suggests the existence of facts

7   harmful to the defendant if the prosecutor has a good faith belief the question will be

8   answered in the affirmative or that facts can and will be proved if their existence is denied."

9   Answer, Ex. C at 16-17 (citation omitted).  The state court reasoned that because all of the

10  challenged questions related to the computer expert's investigation and testimony, "trial

11  counsel could reasonably have failed to object because he held no doubt that the

12  prosecutor (1) had a good faith belief that the questions would be answered in the

13  affirmative, or (2) could prove the facts."  *Id.* at 17.  The state court noted that the evidence

14  had already demonstrated that Warzek's computer harbored at least 1,984 images of child

15  pornography downloaded from websites.  "In this context, the questions to defendant did

16  not make an innuendo but rather essentially asked whether defendant knew from where the

17  pornography came."  *Id.*

18         Warzek contends that a reasonably competent attorney would have objected to the

19  improper line of questioning, particularly in light of trial counsel's efforts to exclude the

20  evidence of child pornography that were found on Warzek's computer.  Traverse at 30.  For

21  the reasons stated by the state court, Warzek fails to show that counsel's performance was

22  deficient.  The prosecution's computer forensics expert, John Muller, testified that he found

23  1,984 files on Warzek's computer that were flagged as possible child pornography and then

24  reviewed to confirm they contained child pornography.  RT 312-315.  The images on

25  Warzek's computer generally were pictures of female white girls as young as three years of

26  age.  RT 315.  Furthermore, during the hearing on the motions in limine, the prosecutor

27  specifically discussed the 1,984 images of child pornography that were found on Warzek's

28  computer and sought admission of a sample of 29 images, which defense counsel sought

United States District Court
For the Northern District of California

1   to exclude as prejudicial.  RT 21-45.  The prosecutor explained that she sought to introduce

2   photos taken from websites that were downloaded from known child pornographic

3   websites, as the computer forensic analysis established.  RT 36-38.  During direct

4   examination, the computer forensics expert testified that he conducted a URL frequency

5   report to determine the number of times that the browser was directed to a particular URL,

6   but did not state specifically how many times each particular website was visited on

7   Warzek's computer.  RT 332.

8   Because the record reflects that Warzek's trial counsel was, or should have been,

9   aware of the evidence that established the foundation for the prosecutor's questions about

10  the various websites on Warzek's computer, he did not have a reasonable basis to object

11  to the prosecutor's cross-examination as lacking good faith belief in the underlying facts.

12  *See United States v. Williams*, 455 F.2d 361, 365 (9th Cir. 1972) (rejecting argument on

13  appeal that trial counsel failed to object to cross-examination of defendant, where the

14  government's questions were asked in good faith, based on a witness's statements to the

15  FBI).  Furthermore, a reasonably competent attorney would not have objected to the

16  questions for lack of a good faith basis to ask about the number of times each website was

17  accessed, or whether the websites actually contained child pornography, because those

18  objections would have given the state the opportunity to bring those facts into evidence

19  through the testimony of the computer forensics expert and the images that were actually

20  found on Warzek's computer.

21  Warzek fails to demonstrate that his trial attorney's performance fell below an

22  objective standard of reasonableness under the first *Strickland* prong.  Further, under the

23  second *Strickland* prong, any failure by trial counsel did not result in prejudicial error in light

24  of the evidence of guilt in the record, as set forth in the discussion denying Warzek's first

25  habeas claim alleging that admission of the child pornography violated his right to due

26  process.  Warzek fails to demonstrate that he was denied effective assistance of counsel.

27

28

United States District Court

For the Northern District of California

### V.    Cumulative Effect of Alleged Errors

Warzek claims that the cumulative effect of the individual errors resulted in a trial that was fundamentally unfair.  Even when separate incidents of misconduct "do not independently rise to the level of reversible error, the cumulative effect of multiple errors can violate due process."  *Wood v. Ryan*, 693 F.3d 1104, 1116 (9th Cir. 2012) (quotation marks and brackets omitted).  Having reviewed the record, the court determines that Warzek's allegations of error, even when considered in the aggregate, do not rise to the level of a due process violation.

### CONCLUSION

For the reasons set forth above, Warzek's petition for a writ of habeas corpus is DENIED.  This order fully adjudicates the petition and terminates all pending motions.  The clerk shall close the file.

### CERTIFICATE OF APPEALABILITY

To obtain a certificate of appealability, Warzek must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward.  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard.  Here, the court finds that three claims presented by Warzek in his habeas petition meet that standard: the first claim that the state court's admission of evidence that he viewed and possessed child pornography violated his due process rights; the second claim that the prosecution's cross-examination of Warzek regarding his possession and viewing of child pornography violated his rights to due process and against self-incrimination; and the fourth claim that trial counsel provided

\\

\\

ineffective assistance of counsel.  Accordingly, the court GRANTS the COA as to those issues.  *See generally Miller-El*, 537 U.S. at 335-38.

**IT IS SO ORDERED.**

Dated:   May 29, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California